The next case this morning is 22-2050 United States v. Cruz-Cruz. The counsel for the appellant may make their appearance and then proceed. Please. Good morning, your honors. And may it please the court. My name is Leah Yaffe for Mr. Victor Cruz-Cruz. Mr. Cruz-Cruz was convicted of unlawfully re-entering the country. And the error in this case is that the district court used the length of Mr. Cruz-Cruz's prior re-entry sentence as a starting point and to set a sentencing floor for the sentence in this case. And that was plain procedural error because the district court was required to start with the guidelines range and then consider and balance against each other the 3553A factors to decide whether they support the downward variance requested by the defendant or the bottom guidelines sentence requested by the government or something else. And I don't think that there's really any dispute between the parties about what the required order of operations is, what the district court is supposed to do, or even that it is procedural error to use the length of a prior sentence for the same or similar offense as a sentencing floor. So, and I believe that that error plainly occurred here. We have the district court's clear statement at the beginning of its sentencing explanation that the sentence for, quote, each return becomes, quote, much longer. So there are no caveats, there's no qualifications. Well, it said that, but then that's, you know, you can't take it out of context. It said, made that statement and then it said, and this being your third conviction, it's my intention to impose a sentence to promote respect for the law and to deter you from returning ever again in the future. And then it proceeded to do exactly what it's supposed to do procedurally, which is it found the facts as found in the PSR, calculated the guideline range, and then it very specifically discussed all of the 3553A factors and focused, just as it said it would, on the need to promote respect for the law and provide adequate deterrence, which was appropriate, and then it imposed a sentence. So I'm struggling to see where that one sentence that you're choosing to rely on is decisive here. Sure. So the district court's saying, you know, deterrence in respect for the law requires a longer sentence. That's true in each return case. And I'm going to abide by that, like your Honor said, and I intend to impose a sentence accordingly, I'm paraphrasing. And then it goes and does the required analysis to set where above that sentencing floor the sentence needs to be. So it's not surprising to me that the court eventually considers the 3553A factors. I think you're going to see that in any case where there's an improper sentencing floor because that's just the floor and you still have to set the precise and particular sentence. So how I read the second sentence after the key quote in this case that your Honor was referencing is to say, look, this is the general rule and it applies in this case as any general rule would. It's sort of just going from there and saying from the get-go, this is what's going to happen in your sentence. It's going to get much longer. Now let me tell you why I've placed it at 30 months. And I think the government's sort of main response to this is to sort of ask this court to read words into what the district court said that just aren't there. The government references likely consequences or what could happen, sort of smuggling in a tendency to what's otherwise I think a pretty clear unqualified statement. And it's not entirely clear to me at all. And that's the point. I mean, the district court didn't say I'm going to impose a sentencing floor and now let me tell you what I'm going to do above that. It didn't do that. I mean, in fact, the one sentence that you focus on is prospective. It says it keeps getting higher. Well, that could mean what happens in the future. It doesn't mean what's going to happen now. So it's not entirely clear at all what the district court is saying. So why doesn't one have to interpret the language? Well, I disagree that it's not clear. I think this goes back to what I was just saying about sort of the connection between the two statements in that paragraph. You have the general rule that also applies in future cases. And you know that the court's not just talking about future cases, I think, for two reasons. One is the court follows it by saying, and this is your third conviction, and I intend to impose a sentence accordingly. And second, it's not the type of rule that it would make sense to apply only in future reentry cases, but not on this third conviction. And I don't think the court's saying, you know, on a third conviction, there's a different rule, but in future cases, each return is going to get much longer. I don't think that that makes common sense and would be a sort of nonsensical way of reading the statement. And so I do think those two sentences together, where you have, you know, right at the beginning of the sentencing explanation, this is the general rule. It applies beyond this case. In fact, it applies in each reentry case. And I'm going to abide by that general rule. It is common sense, though, as the government argues, that the court could have simply been referring to the fact that each time he reenters, it increases his criminal history and it might increase his guideline range. It might increase his guidelines range and it might increase his criminal history. Obviously, some criminal history points can drop off. Had the court said, you know, almost always, I don't think there would be a case here. And the reason I think it's important is the court didn't say almost always it wouldn't be a case here. Well, that sort of surgical precision is not expected from any trial judge. I mean, I don't think we're in a situation. Number one, we're in clear error. So if there is a plausible reading of this transcript that causes you to lose, you lose. And so the fact that two words turn the equation, now that doesn't seem to be really consistent with what our case law is, is it? I'm going to push back on that because I think what we're talking about here is a district court doing one of the, as this court has recognized, one of the weightiest and most solemn tasks it has as a district court is to sentence a defendant and to explain its sentencing process and why it said a particular sentence. I know this isn't a failure to explain case, but in those cases, this court has made clear to district courts that the reason we care about having an explanation is because it is necessary for meaningful appellate review. And we haven't parsed every word in the failure to explain case. We haven't required magic words or something like that. Of course not. But I do think, you know, district courts know that when they're explaining a sentence and when they're talking to a defendant directly, this is your sentence, it's something that they're supposed to do with care. And we would expect a district court to choose its words with care. And when it says something like each reentry sentence gets a much longer sentence, that's not an offhand comment that's a pretty strong statement. It's not one that I would expect a district court to say offhand and really mean something else and not quite mean what he was saying. And the sentence, you know, is pretty specific. It's precise. It says each return. And I think that kind of reference beyond a case is important. It's something that this court's considered. And, for example, Hartley, I know the facts are different in that case, but this court found persuasive that the district court was sort of going against what the 3553A factors required and not doing an individualized assessment of that case because part of the court's language and the key quote in that case referred to a defendant. Instead of this defendant, instead of Mr. Hartley, it said, you know, when a defendant receives probation. And that was something this court really focused on. In both of those cases, Moore and Hartley are dramatically different than this case. In both of those cases, the court set a categorical rule and there was evidence in the record that the court had done it before. Is there any evidence in this record that the court had before set what you posit to be a floor on sentencing? No. This is the type of error that we're talking about here. I found it at least sort of impossible to find one way or the other different sentencing transcripts that this court has talked about. Well, in Moore and Hartley they did, so it's not impossible. But in Hartley, Hartley, the specific error was talking about a blanket policy. Here we're talking about an erroneous legal belief. A judge can have an erroneous legal belief in one case and that's an error. You know, I think it's like in Moore, I know that there were other examples, but it was still about the facts of that case. You didn't give that defendant an individualized assessment. And if in this case the district court didn't adhere to the 3553A factors or do this and the established order of operations correctly, then that's an error whether it's been committed before or after. I understand that that could be helpful to prove a point, but it isn't necessary for showing that a procedural error occurred in a particular sentence. If the court doesn't have further questions at this time about error, I just want to quickly touch on some of the other plain error prongs and then I'll reserve some time. Well, that raises an interesting point. We are under plain error review here, right? Yes, that's right. Well, it seems to me that all is all the more reason that to look at this transcript and say if there is any ambiguity at all, you lose, right? I don't think so, Your Honor. Why is that the case? Because the error has to be clear or obvious. As I sit here and as I read this transcript, it has to clearly or obviously tell me that the court imposed a sentencing floor. And if it doesn't do that. Let me respond to that, and, Therese. First, I do think it's a clear or obvious statement. Second, I don't want to get into the realm of saying, you know, just because a court could speak even clearer or there was a perfect possible way to make sure there was, you know, I can say in five sentences what the court said in one sentence. That doesn't make his one sentence not clear or obvious. So I disagree with the idea that there's ambiguity here. There is no qualification or caveat. This is a very solemn proceeding, and he speaks with precise language. You know, it's not sort of idiomatic, you know, an example. I always eat dessert. Of course, I don't always eat dessert. That would be nonsensical. I'm not eating dessert right now. But if I tell you I eat dessert after each meal, that's much more precise, and that's a believable statement. Here the court's not saying, you know, sentences tend to get longer. He's saying the sentence gets much longer with each return. I think that's a very precise statement, and it does mean something. And then the second sentence, as Judge Moritz pointed out, was hooked to the sentencing policies that govern in determining an individualized sentence, and they go towards respect for the law. And so the idea that the court is going to be implementing those sentencing policies here, it seems to me that that appears to be what the court was doing. And so if you've got that one sentence, and that one sentence does not speak clearly, and you say it does, but if that one sentence doesn't say I'm imposing a sentencing floor, then it's not clear to me at all that on plain error review that there is much room to argue. Let me respond to the first part of your question about the fact that there's reference to 3553A factors here. I think I lost track of that from Judge Moritz's question earlier. I'm not disputing that the sentencing floor appears to be grounded in a general theory of deterrence or promoting respect for the law. The point is that the 3553A factors, including A1, which talks about the circumstances of the instant offense, those need to be considered to see how they impact the three sentencing goals that are relevant here. You can't just say in every case deterrence in respect for the law requires a higher sentence than your last reentry sentence. You have to say in this case, is there a reason on the specific facts of this instant offense to say that a higher sentence is required to achieve deterrence? So I don't think the fact that there's a reference to those factors at the beginning solves the problem that the court wasn't looking at the circumstances of the instant offense and other 3553A factors when setting that floor. And the reason I think it's really important in this case is because you have a situation where the defendant, unlike his prior reentries, has some sort of extraordinary circumstances for coming back to the United States. We're not challenging that he didn't go about that process correctly. This isn't a merits challenge to his conviction. But it does inform what was going through the defendant's head when he decided to go into the United States. And it suggests that in the typical course of events, his prior 24-month sentence may not have been insufficient to deter him from coming back to the States. He was working a stable job in Mexico up until, you know, the danger that sort of prompted this reentry. And so this is something where I would expect a district court to sort of think, hey, maybe this isn't the typical case where we need to, or not even a typical case, but this isn't a case where deterrence requires something higher than a 24-month sentence, which was the prior sentence. I think at this point, especially given that the government doesn't spend a lot of time in the briefing on prongs three and four, I might reserve the rest of my time for rebuttal if that's all right with the court. Next comment. Ladies, sir, good morning. May it please the court. My name is Alexander Flotis. I'm an assistant United States attorney from Albuquerque. We welcome you to New Mexico and hope you all get your full fill of chili before you leave. The United States respectfully requests that this court affirm the sentencing decision and rationale set forth below. I'm going to skip what I actually prepared to address some of the questions raised by your honors in the initial argument here. You will know that last week the United States sent you a Rule 28J letter raising Corchado Aguirre, a past case. I want to raise one piece of the analysis that this court set forth there, when it said viewing the statements individually and collectively, the appellant's view there had inaccurately read what the judge said. And that's really what I think the thrust of your questions has been so far is not just what do these precise words mean, but what is the collective intent being set forth, the rationale being provided by the judge when we read this transcript. You can see at volume four, starting at page 13 of the record, that that's where the sentencing hearing begins. It's not until page 23 that the judge goes into the specific, particularized, succinct recitation of the order of operations. There are nine pages of transcript before that. So when the appellant presents here and says this is at the beginning of sentencing that the judge is setting a floor, that's simply not the case. So much has already happened in the dialogue between the judge and counsel and defendant by the time he starts describing this public policy. By the way, a public policy that is not his own, but one that is set forth in statute by Congress that he is applying. It's also set forth, as we pointed out in briefing, at the outset of chapter four of the sentencing guidelines, which deals with criminal history categories. And that placement is really instructive, right? As counsel go through the guidelines and through the order of operations, they first establish the facts of the case. They next establish the guidelines that apply to that particular defendant. And in order to do that, they've got to establish the offense level and the criminal history. So they're moving through the chapters. They get to chapter four. And before even they're instructed on how to add points for someone's criminal history, they're told, hey, here's the public policy rationale set forth by Congress and how these points apply and why they aggregate over time. So we've had discussion about whether there was a solemn duty being carried out by the judge here. Those first nine pages are entirely instructive of that principle. This judge has already, before getting to the contested words, has already had a conversation with the appellate defendant saying, hey, I know about your history and what happened in Mexico, right? And I want to be sure that you're going to be safe moving forward, that you've got a plan. He's clearly read all the briefing. He understands intimately that motion for a downward variance. He's taking the criminal history and the individualized factors that apply to this particular defendant, and he's running through them as he's moving through this process. The problem here is that opposing counsel's argument is a little more sophisticated. I mean, you've got Moore and Hartley, which are sort of stark examples of what you don't do. And they're stark examples where the court applied an idiosyncratic sort of sentencing structure of how it was going to do things, and it did them. Well, here the argument is not that the district court threw out the sentencing policies of the guidelines and the sentencing policies of 3553A. The argument is the court used those policies to set a floor and to some extent to cut off the process of individualized sentencing that the statute and the guidelines call for. That, as I understand it, is the nature of the argument. So that is not defeated by telling us that the court was following its solemn duty of looking at the sentencing policies and that sort of thing, because you could have both. The court could be doing both. It could be looking at those policies but then still committing error. And so what we need to focus on is really whether that language bespeaks error in this case, whether well-intentioned or not, whether the court erred by saying, you know, I've got to tell you, I look at these sentencing policies and they tell me there's no way that you are going to end up getting a lighter sentence or you should get a lighter sentence than you got before. Yes, sir. That would be accepting, of course, the premise that the United States rejects. So we would not concede that that is the fact. And that's because I've already spoken to the public policy side of my argument on those words. But what he's doing there is evoking a generalized trend. He's explaining how sentencing works in a general way to the appellate defendant. When that person is sitting before him after the judge has already heard from him, he's moved through, again, some of the personal factors. He goes into more just after this. And so it is indeed a very human dialogue and back and forth that he's having with the defendant sitting before him before he enters into the formulaic recitation of the order of operations. I think one way to read this, Your Honors, is to essentially divide the sentencing hearing at page 23 into two parts. The second part where he says, I'm now going to explain the sentence to you. That's, again, that succinct recitation of the order of operations. That's sort of, it feels robotic when I read it. But what's happened before page 23 is where he's gone through that whole process at length in a dialogue, human conversation form. What I'd offer, Your Honors, is what we want judges to do. Because when I stand in the well of a courtroom as a litigator and prosecutor, I want to talk to defendants and I want to go through those, have those kinds of conversations with them. And I can't. It's the person in the black robe who has that power, ability, and authority in the courtroom to speak directly to the defendant in that way, to impress upon them how this works, why the factors and sentencing and all are being applied the way they are, etc. I also want to touch on the fact that the one sentence that's at issue here, that a sentence becomes much longer with each return, is not specific to the case that was being sentenced there. It is, Chief Judge, as you pointed out, perspective and seems to apply to the future if we read it plainly so, although that's not the only interpretation. But the words, much longer, taken as a phrase, are not inflexible, as has been suggested, that it was an inflexible policy. Indeed, the words much longer are entirely ambiguous. They don't assign a numeric value. Much longer, depending on the eye of the beholder, could be two more days or two weeks, months, or years. Well, two weeks would be error in itself. It doesn't matter how long it is. What matters is whether the court took those two weeks off the table as it related to this particular defendant. So it doesn't matter how long the court would have imposed the sentencing floor for. If it was a sentencing floor, I take it you agree it would be error, right? I concede that if he established a floor and said, I am establishing a floor and everything must be longer. Well, that's not going to happen here. But the word that seems important to me is the word does. If you do return in the future, the sentence does become much longer with each return. That's the mandatory-sounding part of it. Yes, ma'am. So there is, Your Honor, a world within which this judge might not have assigned more than 60 days in jail for what happened here. And therefore, in a future criminal history category calculation, there would not be the added additional points above for a sentence above 60 days. What is being asked of this judge is to set forth every single thought that was going through his mind as he's moving through this in order to justify what is a generalized statement. And that's simply not what we ever expect of judges and not what I think the Tenth Circuit wants to impose upon the district courts. It's a generalized statement of description for the defendant. And where it's necessary to point out those precise 3553A factors that are being principally relied upon by this judge, or rather being most heavily weighted, he does set them forth. He speaks to promotion of respect for the law, of deterrence, and has told the appellant on page 24-ish, I've weighed those factors against everything else that I know about you from the motions and from argument about your time in Mexico, about your son in New York, about your history. And I'm going to come out with this particular sentence as a result. So the weighing all happens in this case. Your Honor, there is not error. Chief Judge Holmes, sir, you are correct. It is our position that error should be obvious in this transcript. And if it's not, then the appellant fails on the first prong. Do you accept the premise that Carchado-Aguirre is a stronger case for your argument than this? I mean, is a stronger situation of individualized sentencing than what we have on the record here? I don't, Your Honor, and here's why. I mean, I think the obvious answer you would look for me is yes. And that's because in that opinion, there is a recitation of multiple statements by the judge going through the description of their line of thinking. But I did not read the transcript of that record. I think it's probably because there was more dialogue going back and forth in argument. It's akin to when a defense attorney is making an argument in sentencing, and then the judge starts to make inquiries. That's how that back and forth read to me. And that simply didn't happen here, which goes precisely to the point I was trying to raise a second ago. There is no obvious error here because there was no back and forth, no objection by trial defense counsel here, which would have clarified the intent if indeed there was a concern about what the judge had done. It was on the trial defense counsel to raise that objection in order to put us here, if there had still been an appeal, under a different standard. But since we're not here under abusive discretion, we are here under the plain error analysis instead. It just is the case that because the error is not completely obvious that the appeal should fail, we submit on the first prong. Just so I have a full scope of your response, I mean, to the defense counsel did file a response to your supplemental authority in this case and said that the court there in Curchato Aguirre, quote, clearly was in the process of striking an individualized balance among 3553A factors, argument being that the court was not doing that here. And so I guess what I would say is what would be your response to the idea that Curchato Aguirre is distinguishable because there was there, and I guess that was part of what I was trying to get at with my earlier question, there the court engaged in a lot more discussion about what it needed to do as it related to that defendant to deter him, as opposed to at least the argument here being that the court started with the premise of deterrence in this floor. Sure. Thank you, Your Honor. But therein lies, I think, our disagreement. I don't think, as you just ended your question, that this describing a floor happened at the beginning. It happens nine pages in, and by then the judge has already made multiple inquiries to this defendant in applying the 3553A factors about what happened in Mexico, why he came again, what dangers he faced, what safety plan he had upon returning to Mexico to ensure that he wouldn't come back to the United States again. And those are questions and discussion that are dealing specifically with history and with the defendant's personal background and characteristics, which are the factors that are described by 3553A. And by the time he's having that discussion, the PSR has been filed. Motions have been filed. The PSR has not been objected to. There's already been an admission to the supervised release violation. There's already been a guilty plea where the defendant had taken responsibility and pleaded guilty to the unlawful reentry. So the facts have been mastered. The guidelines have been established and not objected to. And the judge immediately, in having this discussion with defendant, is in the 3553A application phase of sentencing. So, Your Honors, if there are no further questions, we respectfully request that you affirm the district court. We believe that this appeal fails on the first prong. And even if you assume that it doesn't, if you find it doesn't, rather, there is not clear, well-settled law to show that this is plain error. Thank you. Thank you. You know, the government keeps saying that this is effectively an imprecise statement, but then doesn't give any specific reason why it's imprecise other than, you know, sort of abstract theoretical doubt. And they did reference the much longer statement, but I think in context of the sentence does become much longer with each return, it's obviously longer than the prior sentence before. Otherwise, you know, the sentence is precise. As Your Honor mentioned, the word does is in there. I also think the word each is really precise and significant. And, you know, the government's other response is to keep turning back to the fact that the 3553A factors are eventually discussed. Of course they're discussed. In any sentencing floor case, you would presume that the district court would eventually discuss them in setting the specific floor. But that doesn't tell us why there should be doubt for an otherwise precise statement. It doesn't tell us where the ambiguity is. You know, I think the government kind of has inconsistent arguments when you bring in the 28J letter. First, the government's saying this is overly generalized. You shouldn't really read it to be as precise a statement as it is. It's actually just talking about, you know, sort of general future cases. And then the government says this is like court shadow where it's actually part of the individualized assessment in this case. Well, there was a generalized discussion on court shadow required, too. And the fact of the matter is if those two things start looking somewhat alike, even somewhat alike, under clear and obvious error, it seems to me there's a problem for you. I mean, right? I don't think so because I think what we have here is a statement of a general rule and then a statement saying I'm going to apply that general rule. And then an individualized assessment of where above that floor you go. I don't see that as mushy at all. And I don't see anything in the transcript in terms of the words the district court's using that you can point to. There's no basis for this feeling of ambiguity. It's sort of out in the ether. I will assume that I was just on another planet because I don't see the explicitness of it. I don't mean to suggest that, Your Honor. But let me ask you to address before you sit down. Sure. Counsel's emphasis on the notion that there was a run-up to that statement that you focus on and how that run-up should lead us to believe that really what was going on here was individualized sentencing. Sure. I have two responses to that. Just as a factual matter, this was a joint hearing. The first half of the sentencing transcript is really finding the supervised release violations. And so I think some of those nine pages are just not part of the sentencing hearing. Then you have the parties do give argument prior to this part of the sentence. The defendant allocutes. And this statement that we've been talking about in this case comes right when the court sort of switches to responding to the defendant's allocution and then starting to explain its sentence. And it's in that transition point where it's saying, okay, thank you for your statement. I'm going to tell you that each sentence becomes much longer with each return. Let me tell you where yours is going to be set. So I don't see that as – I don't see that the way the government sees it. I also think that argument is a bit formalistic. Of course, the district court had the PSR already and heard argument from the parties. It doesn't change a procedural error if the district court ultimately views this as a requirement where you base a sentence first and foremost on the length of the prior sentence. I don't think the fact that there's a PSR involved and parties have spoken undermines that. I think that's kind of a formalistic way of looking at this error. Thank you. Thank you, counsel. Thank you for your argument.